Munch Brewery, Inc., Judgment Creditor, *v.* Tillie Grief and Abraham Grief, Her Husband, Judgment Debtors.

Supreme Court, Special Term, Kings County, August 20, 1938.

*Andrews, Baird & Shumate,* for the judgment creditor.

*Shepard Broad,* for the judgment debtors.

NOVA, J. Motion to vacate and set aside subpœna for examination of judgment debtor, Abraham Grief.

The judgment debtors, as plaintiffs, instituted an action in this court against the judgment creditor and South Brooklyn Railway Company to recover for personal injuries alleged to have been sustained by judgment debtor Tillie Grief, and medical expenses and loss of services of judgment debtor Abraham Grief, her husband, arising out of an alleged accident wherein the beer truck owned and operated by the judgment creditor collided with a trolley car owned and operated by the South Brooklyn Railway Company, in which trolley car the judgment debtor Tillie Grief was a passenger. After trial a verdict was rendered in favor of the defendants whereupon the judgment creditor entered a judgment for costs amounting to $133. The judgment creditor in said action was insured by the Zurich General Accident and Liability Insurance Co., Ltd., who provided it with counsel.

A policy of insurance issued by the Zurich General Accident and Liability Co., Ltd., to the judgment creditor, contains, among other things, three clauses which it will be necessary to set forth in order to arrive at a decision upon this motion.

### "AGREEMENT I — LEGAL LIABILITY FOR BODILY INJURIES OR DEATH.

" To insure the Assured against loss from the liability imposed by law upon the Assured for damages (including damages allowed for loss of services) because of bodily injuries, or death at any time resulting therefrom including instantaneous death, accidentally suffered or alleged to have been suffered by any person or persons (except those persons referred to in the proviso entitled ' Exclusions '), as a result of the ownership, maintenance or use of any of the automobiles enumerated and described in Declaration 5; including in the case of commercial automobiles, the loading, transportation and unloading of goods usual to the business of the Named Assured as defined in Declaration 4."

### "AGREEMENT IV — EXPENSES

" To pay, in addition to damages, all expenses incurred by the Company for investigation, negotiation or defense; all costs taxed against the Assured in any legal proceeding defended by the Company; all premium charges on bonds to release attachments and on appeal bonds required in all such legal proceedings; and all interest accruing on any judgment for which the Company is liable in whole or in part under Agreements I or II, up to the date the Company shall have paid, tendered or deposited in Court, its share of such judgment."

"GENERAL CONDITIONS

"Subrogation — H. The Company shall be subrogated to all rights which the Assured may have against any person, partnership, corporation or estate as respects any payment made under this policy, and the Assured shall execute all papers required to secure to the Company such rights."

The attorneys for the judgment creditor, who are the same attorneys who defended it in the negligence action, rely upon "Agreement IV — Expenses," as above set forth, as their ground upon which this motion should be denied. They submit an affidavit to the effect that they incurred some $500 in expenses in investigation and preparation for trial. No itemized account of these expenses is set forth in the affidavits, however. And it is to be noted that there was a codefendant in that negligence action, to wit, the South Brooklyn Railway. The attorneys for the Zurich Company admit in their affidavit that it is their intention to apply any costs collected herein to the account of the insurance carrier. It follows, therefore, that none of this money is to be paid to the judgment creditor, Munch Brewery, Inc. The attorneys for Zurich (erstwhile attorneys for the judgment creditor) quote section 775, subdivision 2, of the Civil Practice Act, providing that the attorney for the judgment creditor may at any time within two years from the recovery of said judgment issue a subpœna directed to the judgment debtor requiring his appearance for examination concerning his property, income or other means for satisfying the judgment. They also cite section 530, subdivision 1, of the Civil Practice Act, whereby the attorney of record can satisfy a judgment within a period of two years after its entry. The judgment in this case was entered on June 30, 1937.

It is also argued that if the insured were entitled to collect a bill of costs where an insurance company through its attorneys has successfully defended him in an action brought against him covered by the terms of his policy, the insured would, in effect, be unjustly enriched and would be securing an advantage under the terms of his policy of insurance which would amount to a rebate. It is contended that the Insurance Law, section 65, specifically prohibits rebates.

The judgment creditor Munch Brewery, Inc., is neutral in this matter. It did not authorize or request the attorneys for the Zurich Company to issue the subpœna herein sought to be vacated or to institute supplementary proceedings, nor did it assign its judgment for costs to the Zurich Company.

On July 7, 1938, the attorneys for the Zurich issued and caused to be served a subpœna upon Abraham Grief, one of the judgment debtors, purportedly in the name of Munch Brewery, Inc., for examination in supplementary proceedings based upon the judgment which had been entered in behalf of both defendants for costs on June 30, 1937. It is the contention of said attorneys that " Agreement IV — Expenses," above quoted, must be read together with paragraph " H " under " General Conditions " (dealing with subrogation) of the policy.

Costs obtained in an action belong to the client and not to his attorney. These attorneys were employed by the insurance company and not by the insured. The subrogation clause states: " as respects any payment made under this policy," and it seems to me that this subrogation clause relates back to " Agreement I," that is, to pay on behalf of the insured all sums which the insured shall be obligated to pay as damages because of bodily injuries or property damage as a result of an accident arising out of the ownership, maintenance or use of the assured's automobile. Subrogation under this policy, upon an examination of all the clauses therein contained, applies to a right in the insurance company only in the event of a payment under the policy. There must be a payment by the insurance company for and on behalf of its insured. Until the insurance company paid a claim or judgment it could not bring an action as subrogee because its right as subrogee does not accrue until then. (*Ocean A. & G. Corp.* v. *Hooker Electro-Chemical Co.*, 240 N. Y. 37; *Pacific Fire Ins. Co.* v. *L. A. D. Motors Corp.*, 136 Misc. 594.) If a judgment had been obtained against the Munch Brewery Company, Inc., and was paid by the insurance carrier, in that event the carrier would by virtue of the subrogation clause have a right of action against the driver of the truck owned by the insured, or against a codefendant whose contributing negligence might have resulted in the injury sustained. In the latter instance, the right of the insurance carrier would be for contribution as between joint tort feasors.

Following through with the reasoning of the attorneys for the Zurich Company, supposing the assured was sued by a third party for damages by reason of a collision between the assured's truck and the truck of a third party, and the insurance carrier, on behalf of the assured, defended that action and also interposed a counterclaim on behalf of the assured against that third party for property damage sustained by the assured's truck. Would the insurance carrier be entitled to collect these property damages plus costs, if the counterclaim was successful and the third party's action fell? Similarly, the costs and disbursements entered in a judgment in

favor of the defendant belong to the defendant as compensation for its inconvenience in attending court and having been subjected to suit. Furthermore, the assured paid premiums for its insurance, and the policy it received for its premiums entitled it to be defended competently in the event that it was sued for personal injuries or property damage arising out of an automobile accident. That is something that was to be expected; it was in the minds of the parties to the contract of insurance at the time of the making of the contract. The *quid pro quo* was the premium in exchange for protection in court. The matter of costs arising out of a lawsuit was not even remotely in the minds of the contracting parties at the time of making the contract. Of course, the insurance company must investigate and prepare for trial on behalf of its assured. That is what the premium was paid for. There was no agreement, express or implied, that the insurance company wherever possible should be reimbursed for its outlay for investigation and preparation for defending the lawsuit.

The subrogation clause of the policy comes into play only where the insurance company has to pay a loss " for damages." The fact that the amount of the assured's annual premium might be offset by the amount of costs awarded to him if he succeeded in the action against him is not a rebate of insurance in violation of the Insurance Law of the State of New York. Costs are in the nature of a penalty for the institution of an unsuccessful action and are compensation to the successful party for the trouble and inconvenience necessitated by appearing in court.

The motion to vacate the subpœna for the examination in supplementary proceedings of judgment debtor Abraham Grief is granted.